ORIGINAL

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

NOV - 7 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | ) | SA CR 07 **SA CR 07 - 00239** |
|---|---|---|
| Plaintiff, | ) | <u>I N F O R M A T I O N</u> |
| v. | ) | [18 U.S.C. § 1341: Mail Fraud] |
| ADAM S. ZUCKERMAN, | ) | |
| Defendant. | ) | |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1341]

I.   <u>INTRODUCTION</u>

At all times relevant to this Information:

1.   Defendant ADAM S. ZUCKERMAN ("defendant") owned and operated Brickbanc Capital ("Brickbanc"), also known as Louiscifer Holdings, Channel Equities, Geneva Roth Holdings, Heat


JLW:jlw

Rock, and Tech Capital Holdings, located in Orange County, California.

## II. THE FRAUDULENT SCHEME

2. Beginning in or around 2004 and continuing through in or around 2005, in Orange County, within the Central District of California, and elsewhere, defendant and others, known and unknown, knowingly and with the intent to defraud, devised, executed, and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts, in connection with a fraudulent equipment lease scheme.

3. The fraudulent equipment lease scheme was designed to operate and did operate, as follows:

   (a) Defendant owned and operated Brickbanc that had approximately six to ten employees, including K.M. and B.S. At the direction of defendant, Brickbanc located small businesses in Orange County, California, and elsewhere, that required an infusion of cash to cover their operating expenses, such as rent payments and payroll. Brickbanc would send blast-faxes or use other marketing techniques to advertise money loans and working capital to small businesses.

   (b) At defendant's direction, Brickbanc communicated with customers who responded to the ads, and reiterated that Brickbanc could obtain money loans for them. At defendant's direction, Brickbanc would tell the customers that they would

receive money, but would also have to accept some equipment with which the customers were free to do with it what they wished.

(c) Once the small businesses agreed to Brickbanc's assistance, defendant used false statements and promises to induce lenders to provide equipment leases to the small businesses. More precisely, defendant, through Brickbanc, caused lease applications to be submitted to lenders through vendors ("Vendors"), which purported to sell equipment, typically, computers, to businesses. In these lease applications, the Vendors falsely represented to the lender that the small businesses needed financing for the purchase of the Vendors' equipment. To corroborate this claim, the Vendors submitted false invoices that purported to document the sale of computer equipment to the small businesses.

(d) Before funding the lease, the lenders contacted the small businesses to confirm that the small businesses, in fact, had purchased, installed, and were using the equipment obtained from the Vendors. At defendant's direction, Brickbanc and the Vendors coached the small businesses to provide false information to the lenders in response to these questions.

(e) Based upon false information, the lenders approved the applications and forwarded money to the Vendors for the purported equipment purchases.

(f) Rather than using the lease proceeds to purchase equipment as promised, the Vendors took the money received from the lending institutions, kept a portion for themselves, caused a portion of the money to be paid to the lessee as a cash loan, and

caused a portion to be paid to Brickbanc, from which defendant received funds.

4. In order to execute the scheme, defendant made and caused to be made false statements and false promises to prospective borrowers and lenders, including, without limitation, the following:

    (a) Brickbanc assisted small businesses obtain bona fide cash loans;

    (b) The Vendors were bona fide equipment vendors that sold office equipment to businesses and individuals;

    (c) Brickbanc and the Vendors worked with small businesses who wished to obtain financing from lenders for the purchase of equipment;

    (d) Brickbanc and the Vendors would provide true and accurate sales invoices to the lenders;

    (e) Brickbanc and the Vendors would instruct the small businesses to provide true and correct information to lenders concerning the purchase, installation, and use of the equipment allegedly purchased from the Vendors; and

    (f) Brickbanc and the Vendors would cause the lenders' funds to be used exclusively for the purchase of the equipment specified in the sales invoices.

5. At the time defendant made the false statements and false promises, and caused them to be made, he knew that such statements and promises were false, in that:

    (a) Brickbanc obtained fraudulent equipment leases, not bona fide cash loans, for small businesses;

    (b) The Vendors were in the business of fraudulently depriving lenders of their money, not selling office equipment to businesses and individuals;

    (c) Brickbanc worked with small businesses that wished to obtain cash loans from lenders, not financing for the purchase of equipment;

    (d) The Vendors submitted false invoices to the lenders detailing purported equipment sales that never occurred;

    (e) At the direction of defendant, the small businesses were coached to falsely verify to the lenders that the businesses had purchased, installed, and were using equipment allegedly acquired from the Vendors; and

    (f) Defendant and the Vendors used the loan proceeds to improperly make cash loans to the small businesses and for their own personal benefit.

6. By devising, executing, and participating in the fraudulent equipment lease scheme, defendant caused lenders to lose millions of dollars.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

### III. THE MAILING

7. On or about the date listed below, in the Central District of California, and elsewhere, defendant, for the purpose of carrying out the above-described scheme to defraud, caused the item described below to be delivered by a commercial interstate carrier:

| COUNT | DATE | MAIL MATTER |
|---|---|---|
| 1 | 2/1/05 | Amendment to a Master Lease Agreement was Federal Expressed to CitiCapital, 1255 Wrights Lane, Westchester, PA, 19380, from A.O.'s place of employment, the Law Offices of Edward Hess Jr. in Tustin, California |

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

*/s/ Robb C. Adkins*

ROBB C. ADKINS
Assistant United States Attorney
Chief, Santa Ana Branch Office