IRELL & MANELLA LLP
John C. Hueston (State Bar No. 164921)
jhueston@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

CROWELL & MORING LLP
Wendy Sugg (State Bar No. 223335)
wsugg@crowell.com
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
Telephone: (949) 263-8400
Facsimile: (949) 263-8414

Attorneys for Defendant Adam Stuart Zuckerman

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| United States of America,<br><br>        Plaintiff,<br><br>    v.<br><br>Adam Stuart Zuckerman,<br><br>        Defendant. | Case No. 8:07-cr-00239-CJC<br><br>**DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE WHY BOND SHOULD NOT BE REVOKED**<br><br>Date:     April 11, 2011<br>Time:    11:00 A.M.<br>Judge:   Cormac J. Carney<br>Courtroom:   9B |
|---|---|

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1
II. PROCEDURAL HISTORY OF THIS ACTION................................................2
III. THE UNFOUNDED ALLEGATIONS STEM FROM A CIVIL BUSINESS DISPUTE.............................................................................................2
IV. THE ALLEGATIONS AGAINST MR. ZUCKERMAN ARE WITHOUT MERIT AND AN ATTEMPT TO GAIN ADVANTAGE IN CIVIL LITIGATION ...........................................................................................4
   A. Mr. Zuckerman Disclosed His Identity To Mr. Connelly And Others ................................................................................................4
   B. An Independent Witness Disputes The Allegations Of Threats Made By Mr. Zuckerman ..........................................................6
   C. There Is No Proof That Mr. Zuckerman Authored Any Press Releases Or Emails ..............................................................................6
   D. Glenn Puit Has Been Hired By Mr. Connelly And His Allegations Are Without Merit .............................................................6
   E. Mr. Zuckerman Has Become A Target For Threats ...........................7
V. THERE IS NO PROBABLE CAUSE TO FIND MR. ZUCKERMAN HAS COMMITTED A CRIME WHILE ON BOND .....................................8
VI. THERE IS NO EVIDENCE THAT MR. ZUCKERMAN POSES A DANGER TO THE COMMUNITY ..............................................................10
VII. CONCLUSION ..................................................................................................11

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-i-

DEFENDANT'S RESPONSE TO ORDER TO SHOW
CAUSE WHY BOND SHOULD NOT BE REVOKED;
CASE NO. 8:07-CR-00239-CJC

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

United States v. Aron
 904 F.2d 221 (5th Cir.1990) ................................................................................ 8

United States v. Stanley
 601 F.2d 380 (9th Cir.1979) .............................................................................. 10

United States v. Vaccaro
 719 F. Supp. 1510 (D. Nev. 1989) .................................................................... 10

United States v. Ward
 63 F.Supp.2d 1203 (C.D.Ca. 1999) ................................................................... 10

**FEDERAL STATUTES**

18 U.S.C. § 1341 .................................................................................................... 2

18 U.S.C. § 3148 .................................................................................................... 9

18 U.S.C. § 3148(b) ............................................................................................. 10

18 U.S.C. § 3148(b)(1)(A) .................................................................................... 8

## I. INTRODUCTION

It is unfortunate that what was a separate civil litigation between Progenex Dairy Bioactives, Inc. ("PDB"), and its former Chief Executive Officer, Scott Connelly, is now being improperly used as a tool to launch unfounded allegations of wrongdoing for the purpose of revoking Mr. Zuckerman's bond pending his July 11, 2011 sentencing. In a classic example of "all bark and no bite," the allegations raised by Mr. Connelly and an "anonymous" informant consist of nothing more than the same baseless claims being made in the civil case and are properly adjudicated in that forum. There is no probable cause, only innuendo and inflammatory speculation by Mr. Connelly, to demonstrate that Mr. Zuckerman has committed any crime while on release. Mr. Connelly, dissatisfied with the progress of the civil litigation, has apparently decided to shift tactics and make this a personal fight rather than a business dispute.

Consequently, Mr. Zuckerman has been subjected to threats of additional criminal prosecution, he and his business associates have received threatening packages sent to their homes, and he is the subject of a seemingly endless stream of false and misleading postings on the internet. The majority of these threats are made under fictitious names, but appear to be based on the same allegations put forth by Mr. Connelly to this Court. Similar or, in some cases, identical information can be found on Mr. Connelly's website, where his campaign against Mr. Zuckerman is in full swing. However, the real facts here are that Mr. Zuckerman has extensively cooperated with the government in its investigation of Mr. Zuckerman's conduct and that of many others and has complied with each and every term of his pre-trial release, while being mocked as a "snitch," "rat," and "federal informant."

There is no credible evidence that Mr. Zuckerman has engaged in any wrongdoing, whether criminal or civil, and therefore there is no basis to revoke his

bond. The allegations against Mr. Zuckerman are conclusory and without independent support, and they appear as if designed to gain unfair advantage in a separate pending civil action. Although aware of the allegations for several months, the FBI Agent involved in Mr. Zuckerman's case has not recommended that any action be taken against Mr. Zuckerman. Without probable cause that Mr. Zuckerman has committed a crime while on release, his bond should remain in place. Mr. Zuckerman has and will continue to comply with all conditions of his pre-trial release pending his sentencing in July.

## II.   PROCEDURAL HISTORY OF THIS ACTION

On November 7, 2007, an Information was filed charging Adam Zuckerman with one count of mail fraud pursuant to 18 U.S.C. § 1341. On June 6, 2008, Mr. Zuckerman entered a plea of guilty to Count One of the Information. Mr. Zuckerman's guilty plea resulted from his involvement in a business through which companies in need of financing would receive equipment leases that included a cash refund to the company in addition to the equipment. The financing company, operated in part by Mr. Zuckerman, did not disclose to the financial institutions providing funding for the equipment leases that a large portion of the funds were being "refunded" to the companies leasing the equipment.

Pursuant to his plea of guilty, Mr. Zuckerman was released on a $5,000 unsecured appearance bond, subject to certain conditions of release. Throughout the pendency of his case, Mr. Zuckerman has been in compliance with all of the above conditions of his pre-trial release. Pretrial Services confirms this in its March 3, 2011 letter to this Court. Sentencing is currently scheduled for July 11, 2011.

## III.   THE UNFOUNDED ALLEGATIONS STEM FROM A CIVIL BUSINESS DISPUTE

Pretrial Services reports that since approximately November 15, 2010, it has been receiving phone calls and correspondence from individuals alleging that Mr.

Zuckerman has engaged in fraudulent activity while on release. The onset of these phone calls and correspondence to Pretrial Services coincides with ongoing civil litigation between Mr. Connelly, one of the persons allegedly concerned about Mr. Zuckerman's actions, and PDB, a company with which Mr. Zuckerman is affiliated. In fact, these communications to Pretrial Services started just days after the state court denied Mr. Connelly's request for injunctive relief in the civil litigation. Following that denial, the animosity toward Mr. Zuckerman escalated and the threats and attacks became personal in nature.

By way of background, Mr. Connelly and Mr. Zuckerman were both involved with PDB, a company focused on the development and marketing of a nutritional supplement. Mr. Connelly became involved with the company in or around April 2009, and became its Chief Executive Officer. In March 2010, the business relationship deteriorated over a dispute regarding business operations and Mr. Connelly's contractual obligations to the company. On May 12, 2010, PDB and its investors sued Mr. Connelly in Orange County Superior Court, alleging claims of fraudulent conduct, misrepresentation, wrongful competition against PDB, and breach of fiduciary duties.

The civil litigation has been contentious from the start. Several months after plaintiffs filed the civil complaint, Mr. Connelly filed a cross-complaint seeking a return of his investment in PDB. In support of his cross-complaint, Mr. Connelly filed a motion for a temporary restraining order and a motion for a preliminary injunction seeking return of funds he invested in the company. Both motions were denied on the basis that Mr. Connelly had not demonstrated likelihood of success on the merits. See Exhibit 1.

The recent communications to Pretrial Services and the Court appear to be an unwarranted attempt to gain an advantage in the civil action. This dispute properly belongs in the civil court and Mr. Connelly's attempt to influence the outcome of that case by persuading this Court to revoke Mr. Zuckerman's bond is inappropriate

and does not meet the standard for such an action.  The FBI, also an outlet for Mr. Connelly's accusations, has already reached the same conclusion.

### IV. THE ALLEGATIONS AGAINST MR. ZUCKERMAN ARE WITHOUT MERIT AND AN ATTEMPT TO GAIN ADVANTAGE IN CIVIL LITIGATION

The wide-ranging allegations made by an anonymous person against Mr. Zuckerman in a letter to Pretrial Services and a subsequent letter from Mr. Connelly to this Court are baseless and contain alleged "information" that is contradicted by other sources.  In essence, the allegations made by Mr. Connelly and a "Concerned Citizen" (in a letter similar to Mr. Connelly's in content and format) attempt to establish that Mr. Zuckerman may have failed to disclose his identity to Mr. Connelly and potentially to others, may have threatened to cause physical harm to a one-time business partner, and may have been involved in the creation of fictitious emails and/or press releases.  Despite the lengthy presentation, Mr. Connelly's packet of information is lacking any evidentiary support and parrots the allegations made in the civil action where Mr. Connelly is attempting to avoid liability for his actions.  In that civil case, the state court has denied Mr. Connelly's repeated requests for an injunction, holding that Mr. Connelly has not demonstrated a need for such relief or likelihood of success on the merits.  In a separately pending civil litigation, Mr. Connelly has given sworn testimony that he is biased against Mr. Zuckerman due to the litigation between PDB and Mr. Connelly, and that any statements he makes regarding Mr. Zuckerman should be "viewed as given by a biased witness."  See Exhibit 2 at ¶ 7.  As demonstrated below, Mr. Connelly's allegations are untrue and cannot serve as support for revocation of Mr. Zuckerman's bond.

#### A. Mr. Zuckerman Disclosed His Identity to Mr. Connelly and Others

One of Mr. Connelly's primary concerns appears to be that Mr. Zuckerman

did not disclose his true identity to Mr. Connelly and that Mr. Connelly did not learn of Mr. Zuckerman's criminal history until April 2010. However, Mr. Connelly was provided with this information on or about November 3, 2009, when Mr. Zuckerman, Mr. Page and Mr. Connelly met for two hours to discuss Mr. Zuckerman's ongoing criminal matter. This was prior to Mr. Connelly's execution of the Contribution Agreement. According to Mr. Page, Mr. Connelly was specifically asked if he wanted Adam to "walk" from the company, to which Mr. Connelly replied "I don't see how any of this is relevant. None of this matters to me. I want you involved in the business." See Exhibit 3 at ¶ 14.

In addition to the disclosures to Mr. Connelly and his associates, Mr. Zuckerman disclosed his identity to investors, PDB partners and management. In the pending civil litigation, more than 34 investors have submitted declarations in support of the claims against Mr. Connelly, and several investors submitted sworn statements in support of Mr. Zuckerman's efforts to bring Mr. Connelly's alleged wrongdoing to the attention of the investors and the company. These investors have also expressed their belief that Mr. Connelly is unfairly targeting Mr. Zuckerman to deflect attention from his own wrongdoing. See Exhibit 4. One of the company's largest investors also submitted a declaration in support of Mr. Zuckerman in which he states he has "confidence" in the company's management and has reviewed all relevant documents. See Exhibit 5

Mr. Connelly also attempts to discredit Mr. Zuckerman by painting a picture of a series of interconnected companies that Mr. Zuckerman allegedly controls. Despite lacking any proof besides an allegation that the companies share office space, Mr. Connelly insinuates that somehow because companies share ownership, they are necessarily engaged in wrongdoing. If so then nearly every corporation in the world with a functioning subsidiary or affiliate is guilty of wrongdoing. This leap of logic is unsupportable and cannot be the basis for revocation of Mr. Zuckerman's bond.

### B. An Independent Witness Disputes the Allegations of Threats Made by Mr. Zuckerman

Mr. Connelly also alleges that Mr. Zuckerman may have made threats of violence against a former business associate, David Meltzer during a meeting in November 2009. This statement does not appear be coming from Mr. Connelly himself, but is included in a report authored by an unknown person and submitted by Mr. Connelly.

Despite the inflammatory accusations from unknown persons, no such threats took place at that meeting or any other. David Vendler, a participant in that November 2009 meeting with Mr. Connelly, Mr. Zuckerman, Mr. Meltzer, and others, disputes the account included in Mr. Connelly's report. See Exhibit 6. Mr. Vendler also recalls traveling with Mr. Connelly to that November 2009 meeting and Mr. Zuckerman's background was discussed during that car ride. Id. Again, the "facts" put forth by Mr. Connelly appear to be nothing more than unsubstantiated assertions designed to defame Mr. Zuckerman and gain an advantage in the pending civil litigation.

### C. There Is No Proof That Mr. Zuckerman Authored Any Press Releases or Emails

A third accusation raised by Mr. Connelly against Mr. Zuckerman is that Mr. Zuckerman allegedly issued a false press release against a man named Sean Perich, a business associate of Mr. Connelly's. Again, there is no truth to this accusation, much less any support for it. While Mr. Connelly and Mr. Perich allege that Mr. Zuckerman authored the press release attached to Pretrial Services' submission to this Court, neither man has submitted any evidence to support that accusation.

### D. Glenn Puit Has Been Hired by Mr. Connelly and His Allegations Are Without Merit

On March 1, 2011, a person by the name of Glenn Puit sent a letter to Pretrial Services in which he parrots the same allegations against Mr. Zuckerman as were made by Mr. Connelly. Mr. Puit notes that he has been retained by Mr. Connelly to

investigate Mr. Zuckerman and hopes to influence the outcome of Mr. Zuckerman's upcoming sentencing.

The only "new" allegation contained in Mr. Puit's correspondence is the claim that Mr. Zuckerman "victimized" an individual named Jim Zazlaw by showing up at Mr. Zazlaw's offices and threatened a lawsuit. Interestingly, Mr. Zazlaw's recent deposition testimony paints an entirely different picture. Mr. Zazlaw testified that Mr. Zuckerman had never been to his offices. See Exhibit 7 at 13:1-2. Mr. Zazlaw further testified regarding his dealings with Mr. Zuckerman, never mentioning any "threats" by Mr. Zuckerman. See id. at 13:2-21. The allegations made by Mr. Puit are without any basis, have been contradicted by sworn testimony and are designed to further Mr. Connelly's interests.

### E. Mr. Zuckerman Has Become A Target For Threats

In addition to the numerous calls and letters to Pretrial Services and this Court, Mr. Zuckerman has become the subject of unfounded accusations made to various other government agencies, the press, and others. In addition, threats have been made against Mr. Zuckerman and others involved in PDB, including anti-Semitic references to Mr. Zuckerman's Jewish faith and mocking his cooperation with the government. See Exhibit 8.

Mr. Zuckerman and his business associates have received several packages containing threats of contact with federal agencies, which appear to have been sent by the same "Concerned Citizen" as contacted Pretrial Services. A copy of the November 12, 2011 [sic] FedEx airbill for the "Concerned Citizen" letter to Pretrial Services was also sent in a package addressed to Mr. Page, but the "Concerned Citizen" sender was replaced with "Izze Berg." All other aspects of the airbill are the same. The package contained sexual devices and a note stating "I thought I would send you this Pelican Bay Prep Kit…." See Exhibit 9.

In another similarity to the information provided to Pretrial Services and the Court, Mr. Zuckerman received copies of multiple FedEx airbills that purported to

1  send information to the SEC.  These airbills, from "Keyser Soze" (a key character
2  in the movie "Usual Suspects") use the same phone number as the "Concerned
3  Citizen" FedEx airbill sent to Pretrial Services on November 12, 2011 [sic].  See
4  Exhibit 10.

   In addition to the anonymous threats received by Mr. Zuckerman and Mr.
6  Page, Mr. Connelly's own actions evidence his campaign to discredit Mr.
7  Zuckerman.  Mr. Connelly's website www.bodyrx.com contains the same
8  allegations against Mr. Zuckerman, including postings of Mr. Zuckerman's
9  conditions of release, the Information in this case, and documents concerning Mr.
10 Zuckerman's criminal history.  See Exhibit 11.

   Apparently unhappy with the FBI's response to his assertions regarding Mr.
12 Zuckerman, Mr. Connelly has appeared on radio programs touting that he sent
13 volumes of material to the FBI and they have "failed to do their job."  But, the FBI
14 and the United States Attorney's Office have been aware of these baseless
15 accusations for several months, have investigated this matter, and have not taken
16 any action against Mr. Zuckerman.  In light of that, there is no reason to revoke his
17 bond.  Mr. Zuckerman's sentencing is only three months away and he has been in
18 compliance with all terms of his release.

### V. THERE IS NO PROBABLE CAUSE TO FIND MR. ZUCKERMAN HAS COMMITTED A CRIME WHILE ON BOND

   Revocation of bond is an extreme remedy that may only occur if it has been
22 demonstrated that there is "probable cause" to believe that a defendant has
23 committed a federal, state, or local crime while on release.  18 U.S.C.
24 § 3148(b)(1)(A).  In order to satisfy the probable cause requirement of
25 § 3148(b)(1)(A), the facts available to the Court must "'warrant a man of
26 reasonable caution in the belief' that the defendant has committed a crime while on
27 bail."  United States v. Aron, 904 F.2d 221, 224 (5th Cir.1990).  No such cause
28 exists in this action.

In pertinent part, § 3148 provides:

> The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer-
>
> (1) finds that there is –
>
> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>
> (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that –
>
> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
> (B) the person is unlikely to abide by any condition or combination of conditions of release.
>
> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.

In order to find probable cause for the revocation of bail, the Court should not rely on unsubstantiated hearsay. Where a defendant is charged with breach of a non-appearance-related condition, proof problems become more apparent and should be resolved through an examination of admissible evidence. "A certain

amount of evidence should be taken when determining whether a defendant has, for example, breached a travel restriction, or committed a crime while on release." United States v. Vaccaro, 719 F. Supp. 1510, 1514 (D. Nev. 1989). A defendant faced with such accusations should be afforded an evidentiary hearing "with an opportunity to refute the charges" that he had violated a condition of bond. See United States v. Stanley, 601 F.2d 380, 381 (9th Cir.1979).

Here, there is no admissible evidence for this Court to consider. The documents submitted to Pretrial Services and this Court contain nothing more than unsupported false assertions by unknown authors. The cover letter from Mr. Connelly provides no evidentiary support for his claims. In addition, the similarities between Mr. Connelly's submissions and those of the "Concerned Citizen" and the unidentified parties making threats against Mr. Zuckerman and others cannot be overlooked or discounted.

Whereas probable cause has been held to exist where a defendant has been indicted for another crime while on release, see, e.g., United States v. Ward, 63 F.Supp.2d 1203, 1209 (C.D.Ca. 1999), here the FBI and United States Attorney's Office have been aware of these allegations, have spoken with Mr. Zuckerman and others, and have not taken any action. Unlike an indictment from a grand jury that has weighed the facts, here we have nothing more than one man's attempted vendetta over what appears to be a soured business relationship. Accordingly, there no probable cause to believe that Mr. Zuckerman has committed a crime.

## VI. THERE IS NO EVIDENCE THAT MR. ZUCKERMAN POSES A DANGER TO THE COMMUNITY

Even if there is a probable cause to find that Mr. Zuckerman committed a crime while on release, this is insufficient to revoke his bond. Pursuant to 18 U.S.C. § 3148(b), if the Court "finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial

officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly."

Mr. Zuckerman poses no threat to the community. He has been in compliance with all terms of his release for nearly three years and will continue to do so through the date of his upcoming sentencing. Mr. Zuckerman has met with Pretrial Services regarding the statements made by Mr. Connelly and has been forthcoming about his business operations. The statements made by Mr. Connelly and others working on his behalf are in connection with a pending civil litigation (which Mr. Connelly fails to apprise the Court of in his January 14, 2011 letter) and are apparently designed to gain an advantage in that litigation. There is no foundation for the statements made about Mr. Zuckerman, a fact highlighted by the anonymous nature of many of the communications. Moreover, the accusations have been examined by the FBI and the United States Attorney's Office and neither has taken any action against Mr. Zuckerman.

### VII.   CONCLUSION

This is much ado about nothing. Mr. Zuckerman understands Pretrial Services' concerns in the face of the allegations made by Mr. Connelly and welcomes the opportunity to dispute those allegations in the proper forum – the civil litigation pending in state court. Mr. Connelly's attempt to influence the outcome of that litigation by making unfounded accusations to government agencies and this Court is improper. Mr. Zuckerman has not committed any crime

1  while on release, has complied with all conditions of his release on bond and will
2  continue to comply through his sentencing in July 2011.
3
4  Dated:   April 7, 2011             CROWELL & MORING LLP
5
6
                                      s/Wendy A. Sugg
7                                     _____
                                      Wendy A. Sugg
8                                     Attorneys for Defendant
                                      Adam Stuart Zuckerman
9  48961242
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28